JAMISON *v.* WILSON.[*]

(Division B. Nov. 19, 1928. On Suggestion of Error Jan. 21, 1929.)

[119 So. 800. No. 27152.]

*Corpus Juris-Cyc References: Attachment, 6CJ, section 916, p. 402, n. 3; section 966, p. 417, n. 12; section 967, p. 417, n. 14; section 1175, p. 497, n. 97.

*Engle & Laub,* for appellant.

*Brandon & Brandon,* for appellee.

ETHRIDGE, P. J.   W. W. Wilson, appellee here, sued out a writ of attachment for certain oxen and camp equipment formerly owned by F. M. McCoy, and James Jamison, appellant here, filed a claimant's affidavit, claiming title to the property through a mortgage and a bill of sale executed to him by McCoy for an alleged consideration of five hundred fifty dollars.

It appears that McCoy was engaged in cutting timber and moving same, and was employed by Wilson to cut

timber from the plantation of which Wilson was part owner and the manager. Wilson furnished McCoy certain money and supplies thinking that, under the law, he had a lien on said camp equipment therefor, which equipment McCoy used in the performance of his contract. This contract seemed to be unprofitable to McCoy, and he approached Wilson for permission to move his camp equipment to some other place where he could procure a contract which he thought would be profitable to him and by which he could get some money to pay Wilson, but Wilson refused this permission. Thereafter, and before the suing out of the writ of attachment, Jamison, the appellant, went upon the plantation where the camp equipment was situated for the purpose of moving same, but he was notified by Wilson not to do so, Wilson having made threats that he would shoot him for a little, or some such expression, and thereby Jamison was prevented from moving the property. Jamison then went to the office of the chancery clerk in the county where the property was situated and had his mortgage and bill of sale recorded; said recordation being the day before the suing out of the writ of attachment. McCoy gave bond when the writ was sued out for the forthcoming of the property, and thereafter disappeared from the county and from the litigation. Jamison filed his claimant's issue setting up his claim under his deed of trust and bill of sale. There was a judgment by default against McCoy, and thereupon the claimant's issue came on for trial.

Jamison testified that he let McCoy have five hundred dollars, a part of which he (Jamison) had to borrow, to constitute the consideration of the mortgage; that there was outstanding a mortgage in favor of a third party for a small amount; that McCoy approached him for the purpose of selling the outfit to him subject to this outstanding deed of trust which Jamison was to pay;

that McCoy wanted to leave, and represented that he had another job on another plantation where he could make some money; and that he (Jamison) then brought the property from McCoy, paying a fair value therefor.

The only evidence to dispute this testimony is that of Wilson, who testified that when Jamison came to the place for the stuff covered by the suit, the following conversation took place:

"Q. Tell what Mr. Jamison said to you then? A. He said he was sent there by Mr. Thad Ross to get 'that stuff off, and I asked him why he came at night, and he said he could not tell, he was sent to get the stuff out, and I said, 'for a little bit I will fill you full of lead.'

"Q. What did he say about who he was and his occupation? A. He told me he was a bull puncher and had to get the team.

"Q. Did he, at that time, make any claim to you that he had any lien against the property? A. No sir.

"Q. Or that the property belonged to him? A. No sir he said Mr. Ross sent him."

Ross appears to have been the trustee in one of the mortgages given by McCoy.

At the conclusion of the testimony the appellant requested a peremptory instruction, he having also requested a peremptory at the close of Wilson's testimony, which the court refused to grant, and submitted the case to the jury, who found for Wilson.

We do not think the testimony of Wilson above referred to is sufficient to overcome the evidence of claimant and of the validity of his instruments of title, and we think the peremptory should have been granted.

The judgment will therefore be reversed, and judgment here for the appellant.

Reversed, and judgment here for appellant.

*Reversed.*

## On Suggestion of Error.

Anderson, J. With the suggestion of error, there was filed in this cause a motion to correct the judgment entered in this court. This motion is really a part of the suggestion of error, and will be so treated.

Before the issuance and service of the attachment sued out by appellee against F. M. McCoy, the former gave the attachment bond provided by section 134, Code 1906 (section 126, Hemingway's 1927 Code), in the penalty of four hundred and seventy-five dollars. As provided by the statute, the attachment bond was conditioned to pay the defendant in attachment all such damages as he might sustain by the wrongful suing out of the writ, as well as all costs which might be awarded against appellee. The attachment was levied on a lot of oxen, a wagon, and camp equipment. The defendant in attachment, F. M. McCoy, gave the replevin or forthcoming bond for the property attached provided for by section 151, Code 1906 (section 143, Hemingway's 1927 Code). This bond was in the penalty of five hundred dollars, and conditioned, according to the statute, for the forthcoming of the property bonded to abide the judgment of the court in the attachment suit, and, in default thereof, to pay and satisfy the judgment in the attachment suit to the extent of the value of the property. On the execution and approval of the forthcoming bond by McCoy, the property attached was turned over to him.

Appellant filed an affidavit in the attachment cause, claiming title in himself to the property attached, and that, therefore, it was not subject to the attachment against the defendant in attachment, McCoy. The attachment was sustained. On writ of inquiry, the value of the property attached was fixed at six hundred and fifty dollars. McCoy, the defendant in attachment, breached his forthcoming bond by failing to have the property attached forthcoming to abide the judgment of the court.

There was a judgment in the circuit court against the appellant, the claimant of the property, in favor of the appellee, the plaintiff in attachment, by which the property attached was adjudged to be subject to the attachment. On the former hearing of this cause in this court, the judgment of the lower court was reversed, and judgment entered here in favor of appellant for six hundred and fifty dollars, the value of the property attached and claimed by appellant, and the judgment went, first, against McCoy, the defendant in attachment, and the sureties on his forthcoming bond, to the extent of the penalty of that bond, five hundred dollars, and, next for the excess of one hundred and fifty dollars against appellee and the sureties on his attachment bond, the penalty of which, as stated, was four hundred and seventy-five dollars.

Appellee contends that the judgment is erroneous to the extent that it was against appellee and the sureties on his attachment bond for the excess above five hundred dollars. We are of the opinion that the appellee's contention is well founded. The only liability of appellee and the sureties on his attachment bond was for the wrongful suing out of the attachment, and this liability was alone to the defendant in attachment, McCoy, and not to the claimant of the property attached. For a wrongful levy of an attachment on property, the officer making the levy is liable to the claimant of the property on his official bond, and, in order to protect himself against such liability, he must require the attaching creditor to give an indemnifying bond, as provided by section 3980, Code 1906 (section 3191, Hemingway's 1927 Code). It follows that the judgment entered in this cause should be modified to the extent indicated.

We find no merit in the other grounds of the suggestion of error.

*Sustained in part, and overruled in part.*